UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00085-HBB

CRYSTAL D. PHILLIPS                                                PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Crystal D. Phillips ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 19) and Defendant (DN 24) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered August 22, 2018 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

Plaintiff protectively filed an application for Supplemental Security Income benefits on July 15, 2015 (Tr. 15, 218-26). Plaintiff alleged that she became disabled on January 20, 2010 as a result of fibromyalgia, degenerative disc disease, depression, anxiety, severe back pain with numbness into the legs and feet, stomach problems, fatigue, and constant pain (Tr. 15, 292). Plaintiff subsequently amended her alleged onset date to July 15, 2015 (Tr. 15). Administrative Law Judge Mattie Harvin-Woode ("ALJ") conducted a video hearing from St. Louis, Missouri on September 14, 2017 (Tr. 15, 32-35). Plaintiff and her non-attorney representative, Jeffrey Smith, participated from Bowling Green, Kentucky (Tr. 15, 32-35, 205-06). Mark A. Anderson testified as an impartial vocational expert during the hearing (Tr. 15, 32-35).

In a decision dated November 30, 2017 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-26). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 15, 2015, the alleged onset date (Tr. 17).

At the second step, the ALJ determined that Plaintiff has the following severe impairments: obesity; lumbar degenerative disc disease; history of sensorimotor polyneuropathy in the lower extremities; history of moderate pes planus bilaterally; a history of sleep apnea; posttraumatic stress disorder (PTSD); an anxiety disorder; and a major depressive disorder (Tr. 17). The ALJ also determined that Plaintiff's esophageal reflux; history of migraine headaches; myopia; and astigmatism are medically determinable non-severe impairments (Id.). Additionally, the ALJ concluded there is a lack of evidence in the record to support Plaintiff's allegation of fibromyalgia (Tr. 17-18).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18). Additionally, the ALJ specifically indicated Plaintiff did not meet or medically equal Listings 1.04, 12.04, and 12.15 as well as explained why the "paragraph B" and "paragraph C" criteria for these listings are not satisfied (Tr. 18-19).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 416.967(b), except she needs the option to sit or stand as needed, but can continue working in either position; can occasionally stoop, crouch, and climb; can occasionally climb ramps or stairs; should never climb ladders, ropes, and scaffolds; cannot kneel or crawl; should avoid work hazards and concentrated exposure to vibrations; is limited to simple, routine tasks; and can occasionally interact with the general public, but not in large, crowded, public environments (Tr. 20). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 24).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 15, 2015 through the date of the decision (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 213-17). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Challenge to Finding No. 3

Plaintiff's fact and law summary announces that she "contests finding 3" and directs the reader to Argument 1 in her memorandum (DN 19-1 PageID # 943). Remarkably, Argument 1 accepts the ALJ's conclusion that her mental impairments do not meet or medically equal Listings 12.04 and 12.15 (*see* DN 19 PageID # 935-38). Further, it does not contest the ALJ's determination that Plaintiff has a "moderate" limitation on her ability to interact with others (Id.). Rather, Argument 1 challenges two factual findings the ALJ made in connection with that determination (Id.). Specifically, "there is no indication she has been terminated due to a history of fights or similar behavior" . . . [and] "[s]he interacts with close family without any reported problems" (*see* DN 19 PageID # 935-38 citing Tr. 18-19). Plaintiff argues the two factual findings are flawed because the ALJ overlooked important evidence in the record (*see* DN 19 PageID # 935-38).

The ability to interact with others is one of the four broad areas of mental functioning in the paragraph "B" criteria to Listings 12.04 and 12.15. Specifically, the four broad areas are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "4. *Adapt or manage oneself (paragraph B4)*". 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4. They are

evaluated on the following five-point rating scale: no limitation (or none); mild limitation; moderate limitation; marked limitation; and extreme limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e.

The relevant portion of the ALJ's decision reads:

> In interacting with others, the claimant has moderate limitations. The claimant reported difficulty interacting with others, and she has few, if any, significant social contacts. **However, there is no indication she has been terminated due to a history of fights or similar behavior. She interacts with close family without any reported problems.** Overall, giving the claimant the benefit of every doubt, the undersigned finds she has no more than a moderate limitation in this area.

(Tr. 18-19) (emphasis added).

Plaintiff argues her own testimony demonstrates the ALJ's first factual finding is flawed. During the administrative hearing, the ALJ asked Plaintiff why she stopped working at her last job (Tr. 42). Plaintiff responded she was dismissed from her job at Springview Health and Rehab "because of a complaint by a family member of a resident . . . [s]he said I gave her attitude" (Id.). At best, Plaintiff's testimony indicates her termination was due to an isolated incident that may have involved her being unhelpful, impolite, or disrespectful to the family member of a resident at Springview. Certainly, her testimony does not demonstrate she has been terminated due to a history of fights or similar behavior. Further, the ALJ's finding is consistent with the employment history Plaintiff provided to consultative psychological evaluator J. Lorilea Conyer, M.A., LPP, (*see* Tr. 604, Plaintiff indicated she worked at Springview as a kitchen aide "for 2 years and was fired in January 2010"). Thus, Plaintiff's reliance on her own testimony is misguided.

The next evidence Plaintiff cites is the May 7, 2012 opinion of consultative examiner, Greg

V. Lynch, PH. D. Specifically, Dr. Lynch's opinion included a slight to moderate limitation on the ability to respond appropriately to supervision, coworkers, and work pressures in a work setting (Tr. 339). The ALJ considered but gave no weight to Dr. Lynch's opinion because it addressed Plaintiff's level of functioning more than three years before the alleged onset date of disability and the application date (Tr. 24). Thus, Plaintiff's reliance on this evidence is not fruitful.

Another piece of evidence cited by Plaintiff is the September 22, 2015 comment of consultative examiner Dr. Hamann indicating "[w]e discussed her apparent angry attitude and she said she is currently having no significant problems" (Tr. 597). But this comment relates to Plaintiff's less than compliant behavior while Dr. Hamann attempted to conduct a consultative physical examination (Tr. 597-98). It does not demonstrate the ALJ's two factual findings are flawed.

The next evidence cited by Plaintiff is her October 6, 2015 comment to consultative psychological examiner, Dr. Conyer, "that due to family issues, cops came into her home and took her children at gunpoint without cause" (Tr. 604). The Court has reviewed Dr. Conyer's report and Plaintiff's testimony during the evidentiary hearing. It's not clear from the record what Plaintiff was referring to when she blamed "family issues" for removal of her children from the household. Without more information it would be speculative at best to suggest this evidence demonstrates the ALJ's second factual finding is flawed.

Plaintiff also relies on Dr. Conyer's observations indicating her "eye contact with the examiner was avoidant", her "attitude towards the examination was irritable and guarded", her social maturity appeared isolative, and her adaptive functioning appeared poor (Tr. 605). But her reliance on this evidence is unavailing because it does not address whether Plaintiff has been

8

terminated from work due to a history of fights or similar behavior; and/or whether she interacts with close family without any reported problems. Moreover, the ALJ's first factual finding is substantiated by Dr. Conyer's opinion that Plaintiff's capacity to respond appropriately to supervisors and coworkers in a work setting appears to be affected by her impairments to a "slight degree" (Tr. 606).

In sum, substantial evidence supports the ALJ's findings that there is no indication Plaintiff "has been terminated due to a history of fights or similar behavior" and she "interacts with close family without any reported problems" (Tr. 18-19).

### Challenge to Finding No. 4

Next, Plaintiff argues the mental limitations in the RFC assessment are not supported by substantial evidence as the ALJ failed to adequately account for her ability to tolerate stress and pressures of work and failed to adequately analyze her limitations in social functioning (DN 19-1; DN 19 PageID # 932-38). Plaintiff asserts despite the ALJ affording substantial weight to Dr. Conyer's opinion, the RFC did not address the doctor's opinion that Plaintiff has a moderate limitation on her ability to tolerate the stress and pressures of day-to-day employment (DN 19 PageID # 932-35). Plaintiff also asserts that the ALJ's RFC assessment fails to adequately analyze her limitations in social functioning for the reasons discussed in the section above (Id. PageID # 935-38). Further, Plaintiff contends that the ALJ failed to develop the record concerning her purported failure to seek treatment for mental health issues (Id. PageID # 938-41 citing Tr. 23).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529, 416.927(c), 416.929.

The relevant portion of the ALJ's decision reads:

> Turning to the claimant's mental impairments, the undersigned notes that the medical evidence of record shows no long-term psychotropic medication usage, mental health counseling, or other mental health treatment during the relevant period. The undersigned considered the consultative examination report prepared by Dr. Conyer (Exhibit B6F). The report indicates the claimant has posttraumatic stress disorder and major depressive disorder, the latter of which is described as mild. Dr. Conyer assigned the claimant a high Global Assessment of Functioning score 71. The report indicates that the primary stressors include family conflicts with her siblings, mental and physical problems. She reportedly has deficits in decision-making and physical abilities were noted. Per Dr. Conyer, the claimant's social maturity appears isolative and her adaptive functioning is poor. Regarding her assessment, Dr. Conyers [sic] found that the claimant has the capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks appears to be affected by her diagnosis of PTSD and major depression to a slight degree. Her ability to tolerate the stress and pressure of day-to-day employment appears to be affected by these impairments to a moderate degree. Her ability to sustain attention and concentration towards the performance of simple repetitive tasks appears to be unaffected by these impairments. Her capacity to respond appropriately to supervisors and coworkers in a work setting appears to be affected by these impairments to a slight degree. Based on the claimant's

> reported difficulties interacting with others, as well as Dr. Conyer's
> notation of social isolation and the limitation to simple repetitive
> tasks, the undersigned has included limitations on social functioning
> and limited the claimant to simple, routine tasks. The assessment
> is given substantial weight.

(Tr. 23). The ALJ provided an accurate summary of Dr. Conyer's report (*compare* Tr. 23 *with* Tr. 603-06). In pertinent part, the ALJ's RFC assessment indicates Plaintiff "is limited to simple, routine tasks; and can occasionally interact with the general public, but not in large, crowded, public environments" (Tr. 20).

Plaintiff argues the RFC assessment fails to address Dr. Conyer's opinion that her ability to tolerate the stress and pressure of day-to-day employment appears to be affected by these mental impairments to a moderate degree (*see* Tr. 20, 606). The Court disagrees. Plaintiff has turned a blind-eye to Dr. Conyer's definition of the term "moderate" (*see* Tr. 605). Specifically, it means a "moderate limitation in this area, but the individual is still able to function satisfactorily" (Tr. 605). Thus, Dr. Conyer opined Plaintiff's "ability to tolerate the stress and pressure of day-to-day employment appears to be affected by these impairments to a moderate degree[,]" but she is still able to function satisfactorily in this area. Considering what Dr. Conyer actually opined, the ALJ's RFC assessment of Plaintiff's mental impairments is appropriate and supported by substantial evidence in the record.

Plaintiff's challenge to Finding Nos 9 and 10 on this basis of this claim (DN 19 PageID # 933-35), must also fail because the ALJ's RFC assessment of Plaintiff's mental impairments is supported by substantial evidence in the record. Moreover, this claim is probably forfeited because Plaintiff had the opportunity but failed to develop, through cross-examination of the vocational expert, the record regarding the purported conflicts with the jobs identified in the

Dictionary of Occupational Titles. *See* Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 168-69 (6th Cir. 2009); Ledford v. Astrue, 311 F. App'x 746, 757 (6th Cir. 2008).

Next, Plaintiff also asserts that the ALJ's RFC assessment fails to adequately analyze her limitations in social functioning (DN 19 PageID # 935-38). Specifically, Plaintiff is challenging the ALJ's factual findings that "there is no indication she has been terminated due to a history of fights or similar behavior" . . . [and] "[s]he interacts with close family without any reported problems" (*see* Id. citing Tr. 18-19). The Court addressed Plaintiff's contentions in the previous section and concluded the ALJ's factual findings are supported by substantial evidence in the record. Thus, the ALJ's RFC assessment adequately analyzed Plaintiff's purported limitations in social functioning and is supported by substantial evidence in the record. Plaintiff challenges Finding Nos 9 and 10 on the basis of this claim (DN 19 PageID # 935-38) must also fail because the ALJ's RFC assessment of Plaintiff's mental impairments is supported by substantial evidence in the record.

Finally, Plaintiff contends that the ALJ failed to develop the record concerning her purported failure to seek treatment for mental health issues (DN 19 PageID # 938-41 citing Tr. 23). In making this argument, Plaintiff overlooks additional comments the ALJ made on the following page of the decision (*see* Tr. 24). Specifically, the ALJ commented "[d]espite complaints of severe mental symptoms, there is no indication the claimant has pursued significant, long-term mental health treatment during the relevant period, or that she has been denied such treatment due to a lack of insurance or ability to pay for care out-of-pocket" (Tr. 24). Contrary to Plaintiff's contention, the ALJ's analysis comports with SSR 96-7p and SSR 16-3p because the ALJ considered possible reasons that Plaintiff did not receive or seek treatment consistent with the

degree of her complaints. Further, the ALJ's findings on the subject are supported by substantial evidence in the record.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:	Counsel

13